IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOHN A. STIPPICK,                    §
                                     §
             Plaintiff,              §
                                     §
v.                                   §
                                     §    CIVIL ACTION NO. H-10-0290
STONE & WEBSTER SERVICES, LLC,       §
THE SHAW GROUP, INC., and            §
SHAW ENERGY & CHEMICALS, INC.,       §
                                     §
             Defendants.             §

**MEMORANDUM OPINION AND ORDER**

Plaintiff, John A. Stippick, brings this action against defendants, Stone & Webster Services, LLC, The Shaw Group, Inc., and Shaw Energy & Chemicals, Inc., for employment discrimination based on age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the Texas Commission on Human Rights Act (TCHRA), Tex. Lab. Code § 21.051(1).  Pending before the court is Defendants' Motion for Summary Judgment (Docket Entry No. 31).  For the reasons explained below, the defendants' motion will be granted as to Stone & Webster Services, LLC and The Shaw Group, Inc. and denied as to Shaw Energy & Chemicals, Inc.

## I.  Standard of Review

Summary judgment is authorized if the movant establishes the absence of a genuine dispute about any material fact and the law

entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>) (quoting <u>Celotex</u>, 106 S.Ct. at 2553-2554). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u> (citing <u>Celotex</u>, 106 S.Ct. at 2553-2554). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

## II.  __Undisputed Facts__

In 1992 when Stippick was 50 years old, Stone & Webster Engineering Corporation (Stone & Webster) hired him to work in its Furnace Division as a Senior Principal Engineer.[1]  In 2004 Shaw Energy & Chemicals, Inc. (Shaw) became Stippick's employer pursuant to the purchase of Stone & Webster.[2]  In 2006 Stippick was promoted to Engineering Technologist 5 (ET5).[3]  At least as early as 2007 Stippick was responsible for managing the Proprietary Equipment Technology (PET) group, one of Shaw's two primary engineering technology groups.  Furnace Technology (Furnace) is Shaw's other primary technology group.[4]  In August of 2007 Stippick received a 12.2% raise.[5]

---

[1]Declaration of Jason Turner, Exhibit 1 to Defendants' Motion for Summary Judgment, Docket Entry No. 31, ¶ 4; Declaration of John A. Stippick (Stippick Declaration), Exhibit B in Plaintiff's Exhibit List in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment ("Plaintiff's Exhibit List"), Docket Entry No. 38, p. 1 ¶¶ 1-2.

[2]Declaration of Jason Turner, Exhibit 1 to Defendants' Motion for Summary Judgment, Docket Entry No. 31, ¶ 5.  __See also__ Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 37, p. 2 (acknowledging that "[i]n 2004, the Shaw Group, Inc. purchased Stone & Webster and Stippick became an employee of Shaw Energy & Chemicals, Inc.").

[3]Declaration of Jason Turner, Exhibit 1 to Defendants' Motion for Summary Judgment, Docket Entry No. 31, ¶ 6.  __See also__ Stippick Declaration, Exhibit B in Plaintiff's Exhibit List, Docket Entry No. 38, p. 2 ¶ 8.

[4]Declaration of Jason Turner, Exhibit 1 to Defendants' Motion for Summary Judgment, Docket Entry No. 31, ¶¶ 7-8.

[5]Stippick Declaration, Exhibit B in Plaintiff's Exhibit List, Docket Entry No. 38, p. 2 ¶ 9 and Exhibit B-1 attached thereto.

On February 29, 2008, Shaw hired Stan Knez as Executive Vice-President of Technology Energy & Chemicals.[6]  Knez was Stippick's direct supervisor.  Dan Jones, who managed the Furnace group, also reported directly to Knez.[7]  When Knez was hired, he was 47 years old, Stippick was 65 years old, and Jones was 51 years old.[8]  In August of 2008 Knez consolidated management of the PET and Furnace Technology groups under Jones.  A few weeks later Jones relieved Stippick of his supervisory duties and told Stippick that his new duties would be to consult with other employees and create a textbook based on his knowledge.  In March of 2009, when the textbook was almost complete, Jones discharged Stippick due to a reduction-in-force (RIF).  Neither Knez nor Jones ever counseled Stippick for poor performance.  When Shaw terminated Stippick, it retained three other ET5s:  John Hood, Vance Ham, and Kenneth Fewel.[9]

## III.  Analysis

Asserting that Shaw Energy & Chemicals (Shaw) was Stippick's only employer, defendants argue that The Shaw Group, Inc. and

---

[6]Deposition of Stan Knez, Exhibit C in Plaintiff's Exhibit List, Docket Entry No. 38, pp. 4-5.

[7]Id. at 12.

[8]Stippick was born in 1942 (Exhibit B in Plaintiff's Exhibit List, Docket Entry No. 38, p. 1 ¶ 1 and p. 2 ¶ 10), Knez was born in 1960, and Jones was born in 1956 (Defendants' Motion for Summary Judgment, Docket Entry No. 31, p. 2).

[9]Stippick Declaration, Exhibit B in Plaintiff's Exhibit List, Docket Entry No. 38, pp. 3-6 ¶¶ 12-16.  See also Declaration of Jason Turner, Exhibit 1 to Defendants' Motion for Summary Judgment, Docket Entry No. 31, ¶¶ 9-15.

Stone & Webster Services, LLC are entitled to summary judgment because they were not Stippick's employers and, therefore, cannot be held liable for violation of either the ADEA or the TCHRA. Asserting that legitimate, nondiscriminatory reasons exist for the allegedly adverse employment actions suffered by Stippick, defendants argue that they are entitled to summary judgment on Stippick's claims that he was demoted and subsequently terminated because of his age.   Stippick does not dispute defendants' assertions that Shaw was his only employer, but argues that genuine issues of material fact preclude granting defendants' motion for summary judgment on his age discrimination claims.

## A.   Shaw Energy & Chemicals Was Stippick's Only Employer

Citing _Trevino v. Celanese Corp._, 701 F.2d 397 (5th Cir. 1983), defendants argue that The Shaw Group, Inc. and Stone & Webster Services, LLC are entitled to summary judgment because "they did not directly employ Stippick and cannot be considered a 'single employer' or 'integrated enterprise' under the ADEA."[10] Defendants assert that The Shaw Group, Inc. is the parent company of Stone & Webster Services, LLC and Shaw Energy & Chemicals, Inc.; that Shaw Energy & Chemicals employed Stippick; and that Stone & Webster Services, LLC is only a payroll entity that does not have any employees, officers, or directors.[11]   Defendants argue that

---

[10]Defendants' Motion for Summary Judgment, Docket Entry No. 31, p. 6.

[11]_Id._ at 6 and 22.

-5-

neither The Shaw Group, Inc. nor Stone & Webster Services, LLC had any involvement in any decisions regarding Stippick's employment. Citing their responses to Stippick's interrogatories, defendants explain that

> Shaw Energy & Chemicals, Inc. maintains its own Human Resources Department separate and apart from The Shaw Group Inc. . . . Jason Turner, Sr. HR Manager, Shaw Energy & Chemicals Group and Paula King, Senior HR Director, Shaw Energy & Chemicals Group, provide human resource services only to the Energy & Chemicals Group . . . [Stippick] also can present no evidence that these entities operations were interrelated.   There is no evidence that any documents pertaining to the challenged employment decisions herein were signed by The Shaw Group Inc.'s managers or that any of The Shaw Group Inc.'s managers made any of the decisions at issue.[12]

Thus, defendants argue that neither The Shaw Group, Inc. nor Stone & Webster Services, LLC employed Stippick.[13]

In Trevino, 701 F.2d at 397, the Fifth Circuit observed that in civil rights cases "the rule has emerged that superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer." Id. at 404.   In Trevino the Fifth Circuit listed several factors as relevant in determining whether distinct entities comprise an integrated enterprise: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Id. The Fifth Circuit also observed that

---

[12]Id. at 22 (citing Exhibit 6, Defendants' First Supplemental Response to Plaintiff's Interrogatories Nos. 1-16, Supplemental Response to Interrogatory No. 15, pp. 5-6).

[13]Id. at 6 and 22.

> Courts applying this four-part standard in Title VII and
> related cases have focused on the second factor:
> centralized control of labor relations . . . This
> criterion has been further refined to the point that
> "[t]he critical question to be answered then is:  What
> entity made the final decisions regarding employment
> matters related to the person claiming discrimination?"

Id. (quoting Odriozola v. Superior Cosmetic Distributors, Inc.,

531 F.Supp. 1070, 1076 (D.P.R. 1982)).  See also Skidmore v.

Precision Printing and Packaging, Inc., 188 F.3d 606, 617 (5th Cir.

1999) ("Traditionally, the second of these four factors has been

considered the most important, such that courts have focused almost

exclusively on one question:  which entity made the final decisions

regarding employment matters relating to the person claiming

discrimination?").

Stippick has filed Plaintiff's Response to Defendants' Motion

for Summary Judgment (Docket Entry No. 37) and Plaintiff's

Surresponse to Defendants' Reply Memorandum in Support of Their

Motion for Summary Judgment (Docket Entry No. 41), but has not

responded to defendants' argument that The Shaw Group, Inc. and

Stone & Webster Services, LLC are entitled to summary judgment

because they were not his employers.  Local Rule 7.4 provides that

"[f]ailure to respond will be taken as a representation of no

opposition."  In accordance with Local Rule 7.4, the court may take

plaintiff's failure to respond as a representation of no opposition

to defendants' assertions that The Shaw Group, Inc. and Stone &

Webster Services, LLC were not his employers, and cannot be treated

as a single employer together with Shaw Energy & Chemicals, Inc. because their operations are not interrelated.  See Eversley v. MBank Dallas, 843 F.2d 172, 173-174 (5th Cir. 1988).

Common management and ownership are ordinary aspects of a parent-subsidiary relationship and their mere existence is insufficient to justify treating a parent corporation and its subsidiary as a single employer.  Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 778 (5th Cir. 1997).  "Some nexus to the subsidiary's daily employment decisions must be shown."  Id.  The court concludes that The Shaw Group, Inc. and Stone & Webster Services, LLC are entitled to summary judgment because there is no evidence that either of these entities was Stippick's employer, or that either entity had any involvement in the employment decisions at issue in this case.

**B.   Fact Issues Preclude Summary Judgment for Shaw**

Shaw argues that it is entitled to summary judgment on Stippick's age discrimination claims because

> he cannot establish a *prima facie* case of age discrimination under either the ADEA or the TCHRA. Plaintiff cannot demonstrate that age was either the "but-for" cause or a motivating factor in any employment decision made by Defendants.  Plaintiff also cannot establish that Defendants' legitimate, nondiscriminatory reasons for allegedly demoting him and ultimately terminating his employment were pretext for an otherwise discriminatory motive.[14]

---

[14]Id. at 1.

-8-

1.   Stippick's ADEA Claims

(a)   Applicable Law

The ADEA provides, in relevant part, that it is unlawful for an employer "to discharge any individual . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C. § 623(a)(1).   In Gross v. FBL Financial Services, Inc., 129 S.Ct. 2343, 2350 (2009), the Supreme Court recently analyzed the ADEA's use of the phrase "because of."   In considering whether the burden of persuasion ever shifts to the defendant under the ADEA, the Court reasoned that "because of" means that "age was the 'reason' that the employer decided to act," and held that a plaintiff seeking to establish a discrimination claim under the ADEA must prove "that age was the 'but-for' cause of the employer's adverse decision."   Id.   The Court also held that the plaintiff retains the burden of persuasion to establish this but-for causation "by a preponderance of the evidence (which may be direct or circumstantial)."   Id. at 2351. The Gross decision rejected the mixed-motive framework previously used by the Fifth Circuit to analyze ADEA claims in which the plaintiff relies on direct evidence.   Compare Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005) ("Plaintiffs presenting direct evidence of age discrimination may proceed under the 'mixed-motive' analysis set forth in Price Waterhouse v. Hopkins[, 109 S.Ct. 1775 (1989)."), with Gross, 129 S.Ct. at 2351

-9-

("[W]e reject petitioner's contention that our interpretation of the ADEA is controlled by Price Waterhouse.").

Stippick's claim is not based on direct evidence, but on circumstantial evidence.  Before Gross, the Fifth Circuit analyzed ADEA claims based on circumstantial evidence using the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).  See, e.g., Berquist v. Washington Mutual Bank, 500 F.3d 344, 349 (5th Cir. 2007), cert. denied, 128 S.Ct. 1124 (2008).  In Gross, 129 S.Ct. at 2349 n.2, the Supreme Court observed that it "has not definitively decided whether the evidentiary framework of McDonnell Douglas . . . is appropriate in the ADEA context."  The Fifth Circuit has therefore continued to use the McDonnell Douglas framework post-Gross when deciding ADEA claims based on circumstantial evidence.  See, e.g., Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378-80 (5th Cir. 2010).

While the burden of persuasion to prove but-for causation of age discrimination lies at all times with the plaintiff, the court shall apply the McDonnell Douglas framework to "allocat[e] the burden of production and the order of presenting proof."  Jackson, 602 F.3d at 378.  Under this framework "[a] plaintiff relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision."  Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010) (quoting

-10-

Berquist, 500 F.3d at 349).  To establish a prima facie case of age discrimination, Stippick must show that

> (1) he was [demoted and/or] discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of [demotion and/or] discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.

Jackson, 602 F.3d at 378.  A prima facie case of discrimination is established with only a very minimal showing.  Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 639 (5th Cir. 1985), abrogated on other grounds by St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742 (1993).  If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  "If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual."  Moss, 610 F.3d at 922 (citing Jackson, 602 F.3d at 378-79).  "A plaintiff may show pretext 'either through the evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'"  Id. (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)).  The question is whether the plaintiff has shown that there is a genuine issue of material fact as to whether the employer's reason is pretextual.  Id.

(b)  Stippick Has Raised Fact Issues on Demotion

**(1)  Stippick has Established a <u>Prima Facie</u> Case**

Stippick contends that he "can present a *prima facie* case of age discrimination with regard to his demotion.  He was sixty-six years old, qualified for his job, demoted and replaced with the substantially younger Jones."[15]  Shaw argues that Stippick cannot demonstrate a <u>prima facie</u> case of age discrimination with regard to his demotion because he cannot show that when he was demoted he was qualified to assume another position.[16]  This argument is foreclosed by Fifth Circuit precedent.  <u>See</u> <u>Evans v. City of Houston</u>, 246 F.3d 344, 350 (5th Cir. 2001) (establishing a <u>prima facie</u> case of demotion requires plaintiff to show that she was qualified for the position from which she was demoted).  <u>See also</u> <u>Bienkowski v. American Airlines, Inc.</u>, 851 F.2d 1502, 1506 & n.3 (5th Cir. 1988).

---

[15]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 37, pp. 7 and 13.

[16]Defendants' Motion for Summary Judgment, Docket Entry No. 31, p. 10.  Defendants assert in footnote 11 of their motion that "Plaintiff claims he was 'demoted' in 2008, [but] he suffered neither a reduction in pay nor any change in official title as a result of the reorganization of the PET and Furnace groups in 2008. In fact, Plaintiff continued to receive the same pay for reduced responsibility.  Moreover, the evidence in the record suggests that Plaintiff was managing the PET group only on an interim basis. Therefore, the alleged 'demotion' did not adversely impact Plaintiff and should not be considered an actionable adverse employment action."  The court is not persuaded that any of these considerations lead to the conclusion that Stippick did not suffer an actionable adverse employment action. Moreover, during his deposition Jones acknowledged that Stippick's loss of supervisory responsibilities constituted a demotion.  <u>See</u> Deposition of Daniel Francis Jones ("Jones Deposition"), Exhibit D in Plaintiff's Exhibit List, Docket Entry No. 38, p. 28.

In Bienkowski, 851 F.2d at 1504, an employer alleged that the plaintiff was not qualified for his job as a security representative, even though his performance had been satisfactory for ten years, because his supervisors became unsatisfied with his work.  The employer submitted two affidavits from the plaintiff's supervisors documenting a decline in his performance.  Id. at 1505. The employer argued that the plaintiff had failed to establish a prima facie case under the McDonnell Douglas test because he had failed to show that he performed his job to the employer's legitimate expectations.  Rejecting this argument, the Fifth Circuit reasoned that "a plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action." Id. at 1506.  The Fifth Circuit explained that "[b]y this we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired."  Id. at 1506 & n.3.  The Fifth Circuit explained that "[t]he lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination." Id. at 1506.  The Fifth Circuit reasoned that "[p]lacing a plaintiff's 'qualifications' in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy." Id. at 1505.

Here, Shaw is similarly contending that Stippick is unable to establish a prima facie case of demotion because he is unable to establish that he was qualified to assume another position.   But there is nothing in the record suggesting that Stippick did not possess the same qualifications on the day he was demoted as on the day he was hired.   That is, there is no evidence that some occurrence, such as "suffer[ing] a physical disability or los[ing] a necessary professional license," prevented Stippick from working with the same experience and skill set he possessed when he was hired.   Id. at 1506 & n.3.   Since there is no dispute that Stippick was qualified for the position from which he was demoted, the court concludes that a prima facie case of demotion has been established.

### (2)  Shaw Has Stated a Nondiscriminatory Reason

Shaw contends that Jones was placed in charge of the PET group because of "unacceptable efficiency issues within the PET group under Stippick's management."[17]   Shaw explains that after Knez joined Shaw he identified several problems in the PET group under Stippick's management including "excess overhead, excess project execution costs, and productivity issues."[18]   Conversely, Knez determined that the Furnace group under Jones' management was meeting management's expectations.   Thus, on August 4, 2008, Knex

---

[17]Defendants' Motion for Summary Judgment, Docket Entry No. 31, p. 12.

[18]Id. at 2-3.

announced Jones' promotion to Vice-President of Furnace and PET Technologies, a position that gave Jones responsibility for managing both groups and for supervising Stippick.[19]  Citing the deposition testimony of Jones, Shaw states that

> [s]hortly after taking on his new role, Jones reorganized the PET group because there were issues with regards to clarity in reporting as well as issues regarding inaccurate record keeping on hours charged to jobs. . . In an effort to gain a better understanding of the workings of the department, he assigned some of the mid-level managers to be directly reporting to him. . . Therefore, Jones made the decision to assume the supervisory duties formerly performed by Stippick.[20]

Shaw has satisfied its burden of production by stating legitimate, nondiscriminatory reasons for demoting Stippick by placing Jones in charge of both the Furnace and PET groups, and allowing Jones to assume Stippick's supervisory responsibilities.

### (3)  Stippick Has Raised a Fact Issue as to Pretext

Shaw argues that Stippick "has no evidence that he was treated differently than younger employees during the reorganization of the Technology Group or that the explanation for this decision was false."[21]  Citing Knez's deposition testimony, Shaw argues that

> Knez made a decision that PET needed some leadership, some discipline, and some ability to get control of the overspend on projects. . . Knez recognized that the Furnace Technology group operated in a similar manner and

---

[19]Id. at 3.

[20]Id.

[21]Id. at 15.

Jones was successfully leading that group so he selected Jones to provide that same leadership to PET . . . Indeed, after the reorganization, the PET group's performance increased under Jones' management. Knez testified that what Jones brought to both Furnace and PET met both his requirements and that of the organization . . . Moreover, PET's efficiencies were improved drastically after Jones took over . . . Before August 2008, while under Stippick's management, the PET group required 3,000 to 4,000 man hours to complete a tower internals replacement project. From 2010 on, PET now requires approximately 1,500 hours, or less, for a similar scope of supply.[22]

Stippick argues that "[t]he reason offered by Knez for the consolidation [of the Furnace and PET groups] is not the true reason. In fact, the documents produced by Defendants show the PET group was operating within budget."[23] Stippick argues "[i]n addition, the age-related remarks of Knez and Jones . . . present an issue for the jury as to whether his demotion was motivated by age discrimination."[24]

Shaw argues in reply that "cost overruns were occurring on Stippick's watch," and that "in the deteriorating economy of 2008 and 2009, there was . . . an immediate need to stop [the cost overruns]."[25] Shaw argues that Knez appointed Jones as Vice-President of Technology and PET, and that Jones then decided he

---

[22]Id. at 15-16.

[23]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 37, p. 7.

[24]Id.

[25]Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment, Docket Entry No. 40, p. 2.

needed to take an active role in managing the employees in that department, so he assumed that responsibility and relieved Stippick of his supervisory role.[26]   In support of its argument that Knez's placement of Jones in charge of the PET group and Jones' assumption of Stippick's supervisory responsibilities occurred in response to cost overruns, Shaw cites Knez's deposition at page 43 lines 2-5, and Jones' Declaration at ¶ 6.[27]   Knez explained that he selected Jones to provide leadership to the PET group because "we needed some leadership, some discipline, some ability to get control of the overspend on projects."[28]   Jones stated that

> [b]etween 2008 and 2010, dramatic labor improvements were achieved in the execution of Proprietary Equipment Technology (PET) projects at Shaw E&C Houston.   Before 2008, the PET group required 3000 to 4000 man hours to complete a tower internals replacement project.   From 2010 on, we now require approximately 1500 hours, or less, for a similar scope of supply.[29]

In response, Stippick argues that

> the documentary evidence undermines the credibility of this alleged reason . . .   Stippick requested from Defendants the documents relied upon in making the adverse employment actions made the basis of this lawsuit.   In response, Defendants produced two project

---

[26]Id.

[27]Defendants' Motion for Summary Judgment, Docket Entry No. 31, p. 15 (citing Knez's Deposition at p. 43 and Jones' Declaration at ¶ 6).

[28]Oral Deposition of Stan Knez, Exhibit 2 to Defendants' Motion for Summary Judgment, Docket Entry No. 31, p. 43.

[29]Declaration of Daniel F. Jones, Exhibit 5 to Defendants' Motion for Summary Judgment, Docket Entry No. 31, ¶ 6.

reports, both of which show projects well within budget and profitable.[30]

Stippick supports this argument with his Declaration stating that "the two project reports . . . show us well within budget and making a profit."[31]   Defendants' response is silent on this argument.  Plaintiff's evidence thus undermines the credibility of Shaw's stated reasons for Stippick's demotion.  Moreover, Jones' Declaration merely states that labor efficiency improved between 2008 and 2010.  Jones' Declaration neither states that the cost overruns that allegedly prompted him to assume Stippick's supervisory duties were caused by labor inefficiencies, nor that cost overruns were cured or alleviated by the labor efficiencies gained from 2008 to 2010.

As additional evidence that Shaw's stated reasons for the demotion were pretexts for age discrimination, Stippick points to evidence that both Knez and Jones made pejorative, age-related remarks at managerial meetings held during the four-month period that preceded Stippick's demotion in August of 2008.  Stippick testified at his deposition that in two separate meetings he heard Knez use the term "gray hairs" in the contexts of the desire to replace older people with younger people and rates of compensation.

---

[30]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 37, p. 15.

[31]Stippick Declaration, Exhibit B in Plaintiff's Exhibit List, Docket Entry No. 38, ¶ 18.

Stippick also testified that he once heard Jones use the term "gray hairs" while expressing the desire to replace older employees with younger employees.[32]   At his deposition Jones acknowledged that he has used the term "gray hairs" more than once:

> Q.   Did you ever use the term "gray hairs" in Mr. Stippick's presence at Shaw?
>
> A.   Yes.
>
> Q.   When?
>
> A.   I recall stating -- using the term in a staff meeting.
>
> Q.   What date?  When?
>
> . . .
>
> A.   I don't recall.  I used the term -- I've used the term more than once, and the term relates to someone with experience.
>
> Q.   How many times did you -- You said you used it in a meeting with Mr. Stippick?
>
> A.   Uh-huh.
>
> Q.   Yes?
>
> A.   Yes.[33]

Although Jones explained he uses the term "gray hairs" in a positive sense to mean someone with experience, where a remark is capable of both a discriminatory and a benign inference, in the

---

[32]Deposition of John A. Stippick ("Stippick Deposition"), Exhibit E in Plaintiff's Exhibit List, Docket Entry No. 38, pp. 78-80, 90, 101-105.

[33]Jones Deposition, Exhibit D in Plaintiff's Exhibit List, Docket Entry No. 38, p. 128.

summary judgment context the inference must be drawn in favor of the nonmovant.  See Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 683 (5th Cir. 2001).

Shaw also argues that the "gray hairs" comments made by Knez and Jones are merely stray remarks lacking probative value.  Since Reeves v. Sanderson, 120 S.Ct. 2097 (2000), the Fifth Circuit has taken a cautious view of the stray remarks doctrine.  In Palasota v. Haggar Clothing Co., 342 F.3d 569 (5th Cir. 2003), cert. denied, 124 S.Ct. 441 (2004), the Fifth Circuit stated that such remarks

> are appropriately taken into account when analyzing the evidence . . . even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision.

Id. at 578.

Nevertheless, the Fifth Circuit has continued to apply the so-called CSC Logic test, taken from Brown v. CSC Logic, Inc., 82 F.3d 651, 655-56 (5th Cir. 1996).  Under that test, in analyzing whether a remark is probative of discriminatory intent a court examines whether the comment is related to the protected class of persons of which the plaintiff is a member, proximate in time to the adverse employment decision at issue, made by an individual with authority over the adverse decision, and related to the adverse employment decision.  See Jenkins v. Methodist Hospitals of Dallas, Inc., 478 F.3d 255, 261-62 (5th Cir.), cert. denied, 128 S.Ct. 181 (2007).  But Fifth Circuit cases are unclear as to

-20-

whether the <u>CSC Logic</u> test only applies when comments are offered as evidence of direct discrimination as opposed to circumstantial evidence. <u>Compare</u> <u>Jenkins</u>, 478 F.3d at 261-62 (applying four-factor test to evidence of pretext in evaluating a section 1981 claim); with <u>McLaughlin v. W & T Offshore, Inc.</u>, 78 Fed.Appx. 334, 338-39 (5th Cir. 2003) ("In order to prove pretext in this manner, the statement must:  (1) demonstrate a discriminatory motivation, and (2) be made by a person 'primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decision maker.'") (quoting <u>Laxton</u>, 333 F.3d at 583). <u>See also</u> <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 225-226 (5th Cir. 2000) (holding that workplace remarks sufficed as circumstantial evidence from which inference of discriminatory intent could be drawn even though comments were "stray remarks" under the <u>CSC Logic</u> test); <u>Laxton</u>, 333 F.3d at 583 ("We continue to apply the <u>CSC Logic</u> test when a remark is presented as direct evidence of discrimination apart from the <u>McDonnell Douglas</u> framework . . . [T]he <u>Russell</u> court did not apply the <u>CSC Logic</u> test to a remark introduced as additional evidence of discrimination.").

Under the more relaxed test used in <u>Russell</u> and <u>Laxton</u>, a plaintiff wishing to use workplace remarks as circumstantial evidence of employment discrimination need only show that the remarks demonstrate discriminatory animus on the part of a person who is either primarily responsible for the challenged employment

action or by a person with influence or leverage over the relevant decision maker.  Russell, 235 F.3d at 226; Laxton, 333 F.3d at 583.  But even under the more relaxed standard, the remark cannot be the only evidence of pretext.  Palasota, 342 F.3d at 577 ("After Reeves, however, so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent.").

The court concludes that the appropriate test for judging whether discriminatory remarks are probative of discrimination in a circumstantial evidence case such as this one is the two-part test used in Laxton and Russell, i.e., whether the remarks reflect: (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker.  See Laxton, 333 F.3d at 583; Russell, 235 F.3d at 226.  The remarks of Knez and Jones satisfy both prongs of this test:  referring to people as "gray hairs," as Jones admitted he has done, at the very least hints of discriminatory animus toward older workers, and it is beyond dispute that Jones had control over the decision to relieve Stippick of his supervisory responsibilities.  And Knez's and Jones' age-related remarks are not the only evidence of pretext.  The court concludes that viewed together with the evidence raising a fact issue about cost overruns, the evidence that Shaw's two decision makers, Knez and Jones, made age-related remarks at staff meetings held within four months of Stippick's demotion within the context of discussing the

desire to replace older employees with younger employees raises genuine issues of material fact as to whether Shaw's stated reasons for demoting Stippick were prextexts, and whether Shaw demoted Stippick because of his age.

(c)  Stippick Has Established a Fact Issue on Termination

**(1)  Stippick Has Established a Prima Facie Case**

Stippick argues that he can present "a prima facie case of age discrimination in regard to his termination."  Stippick argues that he "was nearly sixty-seven years old at the time of his termination, was qualified for his job, he was terminated while substantially younger Engineering Technologist ("ET") 5s in the PET group were retained."[34]  Citing Chavarria v. Despachos Del Notre, Inc., 390 F.Supp.2d 591 (S.D. Tex. 2005), for the elements of a prima facie case, Shaw argues that Stippick cannot demonstrate a prima facie case of age discrimination with regard to his termination because he cannot show that when he was terminated he was qualified to assume another position.[35]

In Chavarria, 390 F.Supp.2d at 596, the court recognized that the requirements for establishing a prima facie case of discrimination vary slightly depending on the type of claim brought.  The court explained that

---

[34]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 37, p. 7.

[35]Defendants' Motion for Summary Judgment, Docket Entry No. 31, p. 10.

> [t]he Fifth Circuit has stated that in a RIF case, a
> *prima facie* case is established by evidence that:
> "(1) the plaintiff is within the protected age group
> under the ADEA; (2) he or she is adversely affected by
> the employer's decision; (3) he or she was qualified to
> assume another position at the time of the discharge or
> demotion; and (4) evidence either circumstantial or
> direct, from which a fact finder might reasonably
> conclude that the employer intended to discriminate in
> reaching the decision at issue."

Id. at 597 (quoting Woodhouse v. Magnolia Hospital, 92 F.3d 248,

252 (5th Cir. 1996)).  The court explained further that "[t]he

evidence must specifically lead a fact finder to conclude that

either the defendant consciously refused to relocate the plaintiff

or retain the employee as a result of his or her age . . . when

making its determination as to who would be terminated in the RIF."

Id.

Although like the claims at issue in this case the claims at

issue in Chavarria were based on termination pursuant to a RIF, in

Chavarria the defendant reduced the number of employees by closing

the department in which the plaintiffs worked.  Here, Shaw did not

close the department in which Stippick worked, it only eliminated

one of its ET5 positions — that held by Stippick.  Shaw retained

three employees in ET5 positions — all of whom were younger than

Stippick (Hood, Ham, and Fewel).  Moreover, Stippick cites excerpts

from Jones' deposition acknowledging that Stippick was qualified

for the position from which he was terminated.[36]  Because Shaw did

---

[36]Jones Deposition, Exhibit D in Plaintiff's Exhibit List,
Docket Entry No. 38, p. 55.

not completely eliminate all of its ET5 positions, and because
Stippick has cited evidence showing that he was qualified for the
ET5 position from which he was terminated, the court concludes that
Stippick has satisfied the qualification requirement for establish-
ing a prima facie case.  See Bienkowski, 851 F.2d at 1505.

### (2)  Shaw Has Stated a Nondiscriminatory Reason

Shaw argues that its reasons for effecting a RIF in 2009 were
legitimate and nondiscriminatory.  Shaw explains that

> [i]n 2009 . . . [it] tasked Jones with reducing overhead
> costs based on significant slowing of the economy and
> projects . . . Jones decided . . . to recommend a
> reduction in force ("RIF") . . .
>
> In March 2009, [Stippick's] employment was terminated as
> part of a larger RIF which was necessitated by a general
> economic downturn.  [Stippick] was but one of seven Shaw
> Energy & Chemicals, Inc. employees who were captured [in]
> the March 2009 RIF.  The factors considered in connection
> with the RIF included the last Employee Performance
> Management ("EPM") rating and ranking, needs of the
> business, whether the position was charging to projects
> (and therefore reimbursed by a client) versus overhead,
> and overall quality of work . . . [T]he Company
> considered Stippick's average performance and his lack of
> project work (45% of Stippick's time was being charged to
> overhead). . .
>
> Stippick was a "C" ranked employee, with a 3.55 rating on
> his last EPM . . . In contrast, at the time of his
> layoff, the other three Engineering Technologist 5s in
> the PET group were ranked as follows:  John Hood (age
> 64), ranking: A, rating 4.0; Vance Allen Ham (age 58),
> ranking: A, rating 4.27; Kenneth Fewel (age 56), ranking:
> B, rating: 4.0 . . . Stippick was the lowest ranked and
> rated Engineering Technologist 5 in his group.  Even
> Stippick's self-rating was lower than those of the
> retained.  Every employee in Stippick's position was over
> 55 years of age and the highest ranked employee in the
> group was 64, just two years Stippick's junior . . .
> Stippick was not replaced after the RIF, and his job

duties were absorbed by current employees, including Dan Jones.[37]

### (3)   Stippick Has Raised a Fact Issue as to Pretext

Because Shaw has stated legitimate, nondiscriminatory reasons for terminating Stippick's employment, Stippick must present evidence from which a reasonable jury could conclude that Shaw's stated reasons for his termination are pretexts for age discrimination.  "A plaintiff may show pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'"  Moss, 610 F.3d at 922 (quoting Jackson, 602 F.3d at 378-79).

Shaw argues that "Stippick has no evidence that age was the but-for cause of his alleged . . . termination. . . [Stippick] cannot demonstrate that age played any role in the decision . . . to terminate his employment in 2009."[38]  Citing Walther v. Lone Star Gas Co., 952 F.2d 119, 123 (5th Cir. 1992), Shaw asserts that "[i]n cases where a RIF is the reason for the termination of employment, in order to demonstrate pretext, an employee must show he was clearly better qualified than those employees who were not displaced."[39]  Shaw argues that Stippick

───────────────

[37]Defendants' Motion for Summary Judgment, Docket Entry No. 31, pp. 13-14.

[38]Id. at 11-12.

[39]Id. at 16.

cannot show that he was clearly better qualified than the other Engineering Technologist 5s ("ET5") who were retained. Indeed, at [the] time of the RIF, Stippick was the lowest rated ET5 in the group. Plaintiff even rated himself lower than any other ET5 had rated themselves. Plaintiff cannot demonstrate that the retained Engineering Technologist 5s (who were all over age 55) possessed inferior qualifications. Indeed, Stippick himself described retained ET5 John Hood (age 65) as a "very valuable person" and testified that he suspected Hood's performance ratings were higher than his own since Stippick was the one who rated Hood. . . [Stippick] cannot dispute that he was the lowest rated ET5 in the PET group.[40]

Because he has no legitimate evidence of pretext, [Stippick] attempts to rely on innocuous stray remarks to support his discrimination claims. In fact, the <u>sole</u> reason Stippick believes the RIF was pretextual is "the expressed opinion of managers senior to [him] that -- that they needed to have younger people there. Younger people were hired subsequent to my leaving." . . . However, a comment suggesting that younger people are needed (if made) has no bearing on Stippick's employment or the decision to terminate his employment. Moreover, Stippick has no evidence that younger people were actually hired into his position subsequent to his leaving. Indeed, no ET5 was hired, nor was Stippick replaced.[41]

In <u>Walther</u>, 952 F.2d at 123, the plaintiff produced evidence that he was laid off while younger, less qualified employees were retained and transferred or promoted to positions similar to his own. Asserting that "the issue is not whether Walther or the retained employees were better qualified [because a]n employer is entitled to make that decision for itself," the Fifth Circuit recognized that "a plaintiff can take his case to a jury with

---

[40]<u>Id.</u>

[41]<u>Id.</u> at 16-17.

evidence that he was *clearly* better qualified than younger
employees who were retained." Id.  The Fifth Circuit explained
that

> [i]n many reduction in force cases, the plaintiff's
> qualifications for his job are less relevant since some
> employees will have to be let go despite competent
> performance . . . Here, however, Lone Star's explanation
> for including Walther in the reduction in force was his
> qualifications.  Walther was therefore entitled to show
> that this explanation was pretextual by producing
> evidence that younger, less qualified employees received
> better treatment in the layoffs.

Id. at 124.  The Fifth Circuit did not state that the only way to
raise a genuine issue of material fact for trial is for a plaintiff
to argue and establish that he was clearly better qualified than
retained employees.

> Stippick responds that

> Jones's sole stated reason for terminating him, his EPM
> performance review is a pretext because Jones created the
> performance review and it is completely out of line with
> Stippick's past ratings from other supervisors and a
> contemporaneous one commissioned by Jones through a co-
> worker, John Hood ("Hood").  Hood gave Stippick a higher
> rating than any of the ET 5s received from Jones.[42]

Stippick argues that

> [i]n their motion, Defendants contend [that] the basis
> for the decision was:  1) the last Employee Performance
> Management ("EPM") rating and ranking, 2) the needs of
> the business, 3) whether the position was charging to
> projects, and 4) overall quality of work . . . Defendants
> cite to Jason Turner's . . . declaration for this
> contention . . . However, Turner did not make the
> decision to terminate Stippick—Jones did. And Jones made
> the decision based, not on four factors, but one—the
> employee performance reviews or "EPM" ratings.

---

[42]Plaintiff's Response to Defendants' Motion for Summary
Judgment, Docket Entry No. 37, p. 7.

Jones claims he made the decision based on the relative rating of the last (2008) employee performance reviews of the ET 5s in the PET group.  What Defendants do not mention is that Jones gave Stippick the lower performance review upon which he then allegedly relied in terminating Stippick.  Moreover, Jones cannot remember whether he created Stippick's performance review before or after he made the decision to include Stippick in the reduction in force.  So, for all we know, Jones could have decided to terminate Stippick and then did Stippick's EPM to justify the decision.   The issue then is whether there is evidence to cast doubt on the credibility of Jones's 2008 performance review of Stippick.[43]

Stippick states that the low performance review he received from Jones is not worthy of credence because during his deposition Jones could not provide any factual basis for the low ratings that he gave Stippick, Jones' review of Stippick's performance differed substantially from Stippick's past reviews, and Jones' review of Stippick's performance differed substantially from the review that John Hood gave Stippick at Jones' request.  For example, Jones gave Stippick a 4 for "knowledge and skills" while Hood gave him a 5; Jones gave Stippick a 3 for "productivity/quantity of work" while Hood gave him a 4; Jones gave Stippick a 3 for "communication" while Hood gave him a 5; Jones gave Stippick a 3 for "organization" while Hood gave him a 4; Jones gave Stippick a 2 for "leadership/ staff development while Hood gave him a 4.  Jones' overall rating for Stippick was 3.55 while Hood's overall rating was 4.36.[44]

_____

[43]Id. at 22-23.

[44]Jones' review of Stippick is Exhibit 6 to Jones' Deposition, Exhibit 3 to Defendants' Motion for Summary Judgment, Docket Entry
(continued...)

Hood's overall rating of Stippick's performance at 4.36 placed Stippick above the other three ET5s:  John Hood, rating 4.0; Vance Allen Ham, rating 4.27; and Kenneth Fewel, rating: 4.0.[45]

Shaw contends that Stippick was chosen for the RIF because "it is undisputed that the decision-maker rated Stippick the lowest of all the ET5s in the PET group."[46]  However, during his deposition, the decision maker — Jones — could not remember whether he created Stippick's latest performance review before or after he made the decision to include Stippick in the RIF.[47]  And Jones was unable to state any objective, factual basis for the low ratings that he gave Stippick on his final performance review.[48]  Viewed together with the allegedly pejorative, age-related remarks that Jones admits making,[49] Jones' inability to provide a factual basis for the low

---

[44](...continued)
No. 31; Hood's review of Stippick is Exhibit A-12 in Plaintiff's Exhibit List, Docket Entry No. 38.

[45]Daniel Jones Deposition Exhibits 3, 4, and 5, Docket Entry No. 32.

[46]Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment, Docket Entry No. 40, p. 1.

[47]Jones Deposition, Exhibit D in Plaintiff's Exhibit List, Docket Entry No. 38, pp. 83-87.

[48]Id. at pp. 125-127, 132-134 (where in response to questions seeking an objective, factual basis for Jones' ratings of Stippick and others, Jones responded that the ratings he gave were closely aligned to the descriptions for the rating).

[49]Jones Deposition, Exhibit D in Plaintiff's Exhibit List, Docket Entry No. 38, pp. 128-129.

ratings he gave Stippick on his performance review, and the differences between Jones' ratings that placed Stippick last among the ET5s and Hood's ratings that placed Stippick first among the ET5s, is sufficient to raise genuine issues of material fact for trial as to whether Stippick was terminated because of his age. See Laxton, 333 F.3d at 583, and Russell, 235 F.3d at 225 (two-part test to determine when remarks are probative of discrimination).

     2.   Stippick's TCHRA Claims

Like the ADEA, the TCHRA makes it unlawful for an employer to discharge and/or discriminate against an individual because of such individual's age. Tex. Lab. Code § 21.051(1). Recognizing that in light of the Supreme Court's decision in Gross, 129 S.Ct. at 2343, "the law is presently not well-settled as to what causation showing is required for an age discrimination claim brought pursuant to the TCHRA,"[50] Shaw argues that it is entitled to summary judgment on Stippick's TCHRA claims because Stippick "has no evidence whatsoever that age played any role in either the decision to change his responsibilities in 2008 or the decision to terminate his employment in 2009."[51] Shaw also argues that Stippick cannot rebut any of its legitimate, nondiscriminatory reasons for the employment actions taken against him. For the reasons explained

---

[50]Id. at 19.

[51]Id. at 20.

above with respect to Stippick's ADEA claims, the court concludes that genuine issues of material fact preclude granting Shaw's motion for summary judgment on Stippick's TCHRA claims for demotion and termination regardless of whether the TCHRA causation standard is the "but-for" standard applicable to ADEA claims or the "motivating factor" standard applicable to Title VII claims.

## IV.  <u>Conclusions and Order</u>

For the reasons explained above, the court concludes that the undisputed evidence establishes that Shaw Energy & Chemicals, Inc. employed Stippick during 2008 and 2009, and that neither The Shaw Group, Inc. nor Stone & Webster Services, LLC is an "employer" for purposes of the ADEA and/or the TCHRA.  The court also concludes that Stippick has not raised genuine issues of material fact for trial as to whether these entities were an "integrated enterprise" such that they may be treated as a sole employer under either the ADEA or the TCHRA.  The court therefore concludes that The Shaw Group, Inc. and Stone & Webster Services, LLC are entitled to summary judgment.  The court also concludes that Stippick has raised genuine issues of material fact for trial as to whether Shaw Energy & Chemicals, Inc. demoted and/or terminated his employment because of his age.  Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 31) is **GRANTED** as to The Shaw Group, Inc. and Stone & Webster Services, LLC and **DENIED** as to Shaw Energy & Chemicals, Inc.

The court concludes that this case is appropriate for mediation.  If the parties are unable to settle the case in the next thirty days, they shall provide the court with the name, address, telephone, and facsimile number of an agreed upon mediator.  If the parties would prefer to participate in a settlement conference with United States Magistrate Judge Nancy K. Johnson instead of mediating the case, they shall so advise the court.

**SIGNED** at Houston, Texas, on this 8th day of February, 2011.

_____<br>
SIM LAKE<br>
UNITED STATES DISTRICT JUDGE